SHELBY COUNTY *v.* BICKFORD.

*(Jackson.* April 29, 1899.)

1. CHANCERY PRACTICE. *Applicable to case transferred from Law Court.*

The proceedings subsequent to the transfer of a case from the Circuit Court to the Chancery Court, pursuant to Shannon's Code, § 6074, are according to the forms and rules of chancery pleading and practice, and upon appeal the hearing will be *de novo* upon the record as its component parts may appear, and there is no presumption, as in cases at law in the absence of a bill of exceptions, that the proof below was sufficient to sustain the finding of the Court. *(Post, pp. 397–402.)*

Code construed: § 6074 (S.); § 5008 (M. & V.); § 4236 (T. & S.).

2. MAXIM.

*Nullum tempus occurrit regi. (Post, p. 402.)*

3. LIMITATIONS, STATUTE OF. *Runs against county when.*

An action by a county to recover an indebtedness which it claims by virtue of a contractual relation between itself and defendants, is subject to the statute of limitations the same as an action by an individual. *(Post, p. 402.)*

Cases cited and approved: State *v.* Ward, 9 Heis., 111; Moore *v.* Tate, 87 Tenn., 729.

4. SUPREME COURT. *Will not reverse for variance between decree and summons.*

The objection that the damages allowed by the decree exceed the amount laid in the summons cannot be raised for the first time on appeal, where damages laid in the declaration are not less than those allowed by the decree, as the statute of jeofails is in force in this State. *(Post, pp. 403, 404.)*

Code construed: §§ 4553–4560 (S.); §§ ——, —— (M. & V.); §§ ——, —— (T. & S.).

Cases cited and approved: Johnson *v.* Bank, 1 Hum., 77; Martin

Shelby County *v.* Bickford.

*v.* Bank, 2 Cold., 332; McBee *v.* Petty, 3 Cold., 178; Eakin *v.* Burger, 1 Sneed, 424; Lyon *v.* Brown, 6 Bax., 64.

5. SAME. *Deeds and records not considered part of record, when.*

Deeds and records of other causes used as evidence on the hearing of a chancery cause cannot be considered by this Court, though copied into the transcript, in the absence of bill of exceptions, decree, or other sufficient action to indicate that they were so used in the lower Court. (*Post, pp. 404–406.*)

Code construed; ¿ 4836 (S.); ¿ 3821 (M. & V.); ¿ 3108 (T. & S.).

Cases cited and approved: Allan *v.* State, M. & Y., 295; Bush *v.* Phillips, 3 Lea, 63; Railway Co. *v.* Foster, 88 Tenn., 671; Marble Co. *v.* Black, 89 Tenn., 121.

6. SAME. *Cannot amend record.*

This Court cannot incorporate into the record sent up evidence not made part of it, though it is made to appear by affidavits that such evidence was used on the hearing in the lower Court. (*Post, pp. 406, 407.*)

Case cited: Kennedy *v.* Kennedy, 16 Lea, 736.

7. PLEADING AND PRACTICE. *Several and inconsistent pleas allowed.*

Under our practice, the defendant may plead and rely upon several and inconsistent pleas, and hence the admission of the covenants sued on, implied from the plea of covenants performed does not deprive defendant of the benefit of other distinct pleas denying execution of the deed and covenants. (*Post, pp. 407, 408.*)

Code construed: ¿ 4638 (S.); § 3617 (M. & V.); ¿ 2907 (T. & S.).

Cases cited: Steele *v.* McKinnie, 5 Yer., 549; Governor *v.* Organ, 5 Hum., 161; Langford *v.* Frey, 8 Hum., 443; Kelly *v.* Craig, 9 Hum., 215.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. STERLING PIERSON, Ch.

R. D. JORDAN, GEO. B. PETERS, and GILMER P. SMITH for Shelby County.

JAS. H. MALONE and J. M. GREGORY for Bickford.

McFARLAND, Sp. J.    This suit was brought on January 8, 1889, by the county of Shelby against W. A. Bickford and Amos Woodruff, in Circuit Court. The damages laid in summons were $10,000. The declaration contained three counts, two of which, in substance, alleged that Bickford and Woodruff, being seized of certain lots in Memphis, Tenn., known as the Overton Hotel property, on April 23, 1874, sold these lots to the county of Shelby for $150,-000, a part of which was paid in cash, and notes given for deferred payments; that a deed was executed in which the defendants covenanted that they were seized in fee, had a good right to convey, that the land was free from incumbrances, and that they would defend title to same. The declaration says as to this deed: "And by this deed here to the Court shown, in consideration of $150,000, . . . did bargain and sell;" etc. This deed does not appear to have been filed with the declaration or appear in the record as originally filed in this Court. The declaration averred a breach of the covenants especially against incumbrances, alleging that Bickford and Woodruff were the owners of the property in 1870 and 1871, and that there was due the State

and county for taxes, which were a lien on this property, for the years mentioned, to the State $2,-732.38; county, $7,243.05; total, $10,475.43, and that this first sum of $2,732.38 due the State the plaintiff had to pay the State under decree of sale made in the cause of *Anderson* v. *Partee et al.*, in Chancery Court of Shelby County, Tennessee.

The first count concludes in these words: "And the plaintiff avers that it has often demanded of the defendant the payment of said sum of $2,732.38 paid to the State of Tennessee, and the sum of $7,743.05 due to it for the assessed value for said property for the years 1870 and 1871, but, notwithstanding this, said defendants have wholly and entirely failed and refused to pay either or any part of said sums of money or interest, to the plaintiff's damage, wherefore it sues."

The second count recites the deed, covenants, etc., and avers that the lots were liable for taxes to the State and county for 1870 and 1871, for $10,106.13, and that the defendants were bound by their covenants to pay the same; that when final payment of the balance due on the purchase was made in the sum of $14,035, on February 2, 1885, the defendants declared that all taxes due and a lien on said property had been paid, and that it was free from taxes, notwithstanding which the defendant suffered said land to be sold for taxes due to the State for the years 1870 and 1871,

Shelby County *v.* Bickford.

| | |
|---|---|
| For the sum of _____ | $ 2,363 08 |
| Together with the cost of the cause_____ | 369 30 |
| Making a total of _____ | $ 2,732 38 |
| Which, added to amount due county_____ | 7,743 05 |
| Made a grand total of _____ | $10,475 43 |

The main feature of this count is to have a recovery upon the verbal promise and undertaking of the defendants, thus set forth: ''And the plaintiff avers, at the time of the payment of the several sums of money due the said defendants for the purchase of said property by the plaintiff, and especially on the occasion of part payment, to wit, the second day of ·February, 1885, the said defendants represented that each and all of the taxes on said property due the State and county, including all years, have been paid, and if there were any still due prior to the year 1875, the same should and would be paid at once, and they positively alleged, plaintiff avers, that all of said taxes were then paid and discharged. But, notwithstanding this, the said taxes due for the years 1870 and 1871 were forced out of plaintiff in order to redeem their said property, and the county taxes for the years 1870 and 1871 still remain unpaid to plaintiff, though often requested,'' etc.

The third count in the declaration is for money loaned, work and labor done, and money paid for them, all on February 2, 1889, etc., without stating any amount claimed.

Bickford filed twenty different pleas, in which he denied every material averment of the declaration, and

plead covenants performed, limitation, payment, stated account, settlement, merger, general issue, etc.

The case was, by order of the Circuit Court and the consent of the parties, transferred for trial to the Chancery Court November 28, 1890. Woodruff made no defense, and a *pro confesso* was taken as to him, and no further notice seems to have been taken so far as he was concerned, his name not being mentioned in the final decree. W. A. Bickford having died, a motion was made on, to wit, November 25, 1895, by counsel for the defense, to abate the cause, for the reason that four whole terms of the Court had elapsed since the death of Bickford had been suggested and proven, and as it appeared to the Court that *scire facias* had been issued and served on the executrix of Bickford, requiring her to show cause why the suit should not be revived against her, the motion to abate was overruled and the cause was revived.

On October 8, 1895, a stipulation of counsel was filed in the cause by which they agreed to use the original papers in the chancery case of *Anderson* v. *Partee* as evidence in the cause, subject to all exceptions for irrelevancy and incompetency. This record in the case of *Anderson* v. *Partee*, No. —, Chancery Court of Shelby County, appears in the transcript, but how it got there does not appear except upon affidavits of complainant's attorney, filed upon suggestion of diminution. There was a

decree in the Chancery Court against W. A. Bickford's estate for $13,984.63, appeal and assignment of errors by Bickford's executrix.

It is necessary, before noticing the several assignments of error, and in order to correctly determine this case, that we should fix and define the status of this case, and of the complainants in the case.

The case was begun by summons in the Circuit Court, and declaration filed there. It was then removed to the Chancery Court, and further proceedings had there. The results may be very different if the case was continued in the Chancery Court as a law case and heard as such. If still a law case, inasmuch as there was no bill of exceptions filed, the presumption here will be, whatever may be wanting of proof in the record, that there was proof below sufficient to sustain the finding of the Court below. If proceeded with after removal and heard as a chancery cause there, upon appeal here the hearing will be *de novo* and upon the record as its component parts may appear.

The order transferring is as follows: "On application of plaintiff to transfer this cause to the Chancery Court of Shelby County, and it appearing to the Court that it is a cause of an equitable nature, and, by consent of parties, it is by the Court ordered that this cause be, and is hereby, transferred for further proceedings and trial to the Chancery Court of Shelby County," etc. This order was made under the provisions of § 6074, Shannon's

18 P—26

Code, which provides for such removal, and clearly contemplates that proceedings subsequent to removal shall be according to the forms and rules of chancery pleading and practice.

The next question is as to the status of the plaintiffs with respect to this suit. If this is an action by the State in its sovereign capacity, or by the county as one of the agents of the sovereign, and for the recovery of taxes, then the ordinary statutes of limitation will not apply, under the maxim, "*Nullum tempus occurrit regi*," unless the Acts 1885, Ch. 24 and Ch. 86, apply.

This action is not by the county to recover taxes—quasi taxes—but to recover an indebtedness, which it claims by virtue of a contractual relation between it and defendant. It is not brought by the county in its delegated sovereign capacity for the recovery of any revenue due it by imposition of its sovereign will, but as an individual sues another individual for any ordinary breach of contract. It is well settled that in such cases, where the government enters into trading relations or litigation, it divests itself of all sovereignty and loses its exemption. *The Siren*, 7 Wall., 154; *Bank U. S.* v. *P. Bank*, 9 Wheaton, 907; *Shomburg* v. *United States*, 103 U. S., 667; *Moore* v. *Tate*, 3 Pickle, 729; *State* v. *Ward*, 9 Heis., 111; Angell Lim., Sec. 41; *Galloway* v. *Copart*, 45 Ark., 81.

The case, then, is to be tried as one between two

Shelby County *v.* Bickford.

individuals, governed by the rules of chancery pleading and practice.

Proceeding, then, to the examination of the question involved in this record, as raised by the several assignments of error, we find that the first assignment of error is that the decree was too large, being for $13,984.63, while the damages laid in summons are only $10,000. This objection was not made until in this Court. This is too late. The declaration in all the counts, except the third, claims $15,000 damages. There was no plea in abatement, motion in arrest of judgment, or other objection below. The declaration increased the damages, issue was made upon it, trial and verdict. " By statute of jeofails," says Stephens, " an objection to variance between declaration and original summons cannot now be taken by writ of error after verdict." Stephens Plead., 427. It is settled in Tennessee that a variance in the writ and declaration is cured by plea in bar and trial on the merits. *Johnson* v. *Planters' Bank,* 1 Hum., 77.

In this case the Court held that the statute of jeofails is in force in Tennessee, and that the statute 5 George I. declares that no judgment shall be stayed or reversed for any defect or fault, either in form or substance, in any bill, writ, or for any variance in such writs from the declaration or other proceedings. The Court says: " Had the defendant in the Court below pleaded in abatement, they would have defeated the plaintiff's action, but they chose to

plead to the declaration in bar and to have a trial on the merits. Having done so, and a verdict having been found against them, the situation of the parties is very much changed . . . We consider, therefore," says the Court, "that the statute of 5 George I. is in force, and that, after verdict, no judgment can be reversed for any variance in the writ from the declaration either in form or substance."

Now, under the various statutes as to amendments, carried into the Code §§ 4553 to 4560, this Court will permit amendments of the writ so as to conform to the declaration and judgment. *Martin v. Bank of Tennessee*, 2 Cold., 332. And this is usually done by merely considering it as done. *McBee v. Petty*, 3 Cold., 178; *Eaken v. Burger*, 1 Sneed, 424; *Lyon v. Brown*, 6 Bax., 64. This assignment of error is not well taken, and is overruled.

The second assignment is as follows: "The action is based on alleged covenants of a certain deed. Defendant Bickford, by plea, denied having made such a covenant. The deed was not offered in evidence, nor is there a line of evidence to show that Bickford entered into the covenants sued on, hence there is no evidence to support judgment or decree."

The sixth assignment raises the same question as to the record in the case of *Anderson v. Partee*. It follows the fifth assignment of error as to statute of limitations, and is as follows: "The action is not taken out of the operation of the statute by reason of the alleged chancery suit of *Anderson v.*

*Partee.* The record in that case, though copied into the transcript, is no part of the record in the pres-ent case. It was not made a part of the record either by being filed in the cause, or by a bill of exceptions, or by recitation in the decree of the Court.''

The eighth assignment is also to the effect that, for other reasons, this record is incompetent as evidence in this suit.

These three assignments of error raise substantially the same question.

As to the deed, which is the basis of complainant's action, it was not copied in the original transcript; it was not mentioned in the final or any other decree. The only reference to it in the record was, as has been shown in the declaration, where it is referred to as ''here shown to the Court,'' and Woodruff, in his testimony, also referred to it in a general way and only incidentally. He does not pretend to set up such deed.

As to the record in the case of *Anderson* v. *Partee,* Chancery Court, which is copied in the transcript, the only reference to that in this case is an agreement of counsel, filed in this cause December 6, 1895, that the record in that cause ''may be used herein as evidence on the hearing of this cause in lieu and instead of certified copies, . . .. exceptions for incompetency and irrelevancy, as to all or any portions of said record, reserved.'' The decrees, interlocutory or final, do not mention this

case. There was no bill of exceptions filed in the case. There is no evidence, therefore, in the record that either the deed upon which complainant based his recovery, or the record in *Anderson* v. *Partee*, upon which complainant sought to base an outstanding incumbrance, were ever used as evidence. Neither of these appear to be a part of the record. The agreement of the parties is only that the proceedings in *Anderson* v. *Partee* may be used—not that they were used. There is nothing showing they were used.

It is the province of a bill of exceptions to make the evidence used in the trial of a cause a part of the record where not made so by the statute. *Allen* v. *State*, M. & Y., 295; *Bush* v. *Phillips*, 3 Lea, 63.

Sections 4836 and 4839 make depositions filed and exhibits and bonds part of the record.

But without such bill of exceptions or some decree entered in the cause, making deeds or records of other causes parts of the record in the case appealed, they will not be considered. *Railway Co.* v. *Foster*, 4 Pickle, 671; *Marble Co.* v. *Black*, 5 Pickle, 121, and cases cited.

After the appeal was effected in this cause and transcript filed here, diminution of record was suggested here, and several affidavits filed seeking to show that the deed referred to and the record in the cause of *Anderson* v. *Partee* were both read on hearing below, and the deed was thereupon sent up and filed with the balance of the record. This,

however, does not make these papers a part of the
record.    Even the trial Judge cannot, after appeal,
amend and insert in the bill of exceptions omitted
recitals, though parties agree to its being done.
*Kinnedy* v. *Kinneday*, 16 Lea, 736.    The effort here
is, by affidavits filed in this Court, to supply the
bill of exception and incorporate into the record here
evidence which was never made a part of the record
in Court below.    This practice is vicious in itself,
contrary to established rules, and would lead to harm-
ful results in the future.

It is insisted, however, that inasmuch as the
defendant did not plead *non est factum*, demur,
or crave oyer, and did plead covenants per-
formed and went to trial on such issue, he waived
the objection this assignment of error raises.    It is
true, a plea of covenants performed, under our de-
cisions, admits the covenants to be as set out in the
declaration.    *Steele* v. *McKinnie*, 5 Yer., 449; *Gov-
ernor* v. *Organ*, 5 Hum., 161.    Under these authori-
ties, if the plea of covenants performed stood alone,
and was the only defense set up by plea of defend-
ant, it would have been unnecessary to prove the
making of the covenants.    But this was not the
only plea of the defendant.    The first plea pleaded
was that "he did not undertake, agree or covenant
as the plaintiff hath in its ·declaration alleged."
The second plea says "he does not owe the plaintiff
anything on the deed or covenants, or on account
of any matters or thing whatever alleged or set

forth in the declaration.'' These, and other pleas of the twenty filed, negative the allegations of the declaration as to execution of the deed and covenants sued on. Each of these separate pleas made a separate and distinct defense, and were not waived by anything set up or conceded by the legal effect of the pleading itself in any other separate and distinct plea. Defendant may plead as many pleas as he has real grounds of defense. Code, § 4628 (S.) These pleas may be inconsistent—as, a defendant sued as executor may plead *ne unques executor*, *non est factum*, or a defendant sued for slander may plead not guilty, statute of limitations, and justification. *Langford* v. *Frey*, 8 Hum., 443; *Kelly* v. *Craig*, 9 Hum., 215.

The result of these authorities and their application is that there is no evidence in the record to support the decree or upon which this Court can decree in favor of the complainant, and the decree of the Chancellor is reversed and the bill dismissed at the cost of complainants. We add, however, that, upon an examination of the several interesting questions presented in this record as a whole, and so ably argued by the learned solicitors for both sides, we are satisfied this conclusion reaches the real merits of the case.